## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| Judicial Watch, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-397 (TSC) |
| | ) | |
| CIA *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Judicial Watch, Inc. brings this action against Defendants the Central

Intelligence Agency ("CIA"), the U.S. Department of Justice ("DOJ"), and the U.S. Department

of the Treasury ("Treasury"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

The parties have cross-moved, pursuant to Federal Rule of Civil Procedure 56, for

summary judgment.  For the reasons set forth below, the court will GRANT Defendants' motion

for summary judgment and DENY Plaintiff's motion for summary judgment.

## I.  BACKGROUND

Plaintiff sent requests to Defendants on January 25, 2017, asking for "[a]ny and all

records regarding, concerning, or related to the investigation of retired Gen. Michael Flynn's

communications with Russian Ambassador to the United States Sergey Kislyak between October

1, 2016 and the present."  (ECF No. 13 ("Pl.'s Resp. 7(h)(1) Statement") ¶¶ 1, 20, 32.)  In

addition, Plaintiff conveyed the following to each agency: "[f]or purposes of clarification, please

find enclosed a CNN report regarding the investigation, which cites information that was

provided to CNN by members of the Intelligence Community."  (ECF No. 10-5, Ex. A ("FBI

1

FOIA Request"); ECF No. 10-6, Ex. A ("Treasury FOIA Request"); ECF No. 10-7, Ex. A ("CIA FOIA Request").)

Within three weeks of receiving the requests, the FBI and Treasury separately responded to Plaintiff and assigned separate tracking numbers. (Pl.'s Resp. 7(h)(1) Statement ¶¶ 1–2, 20–21.) The CIA, however, did not acknowledge receipt of Plaintiff's request until after Plaintiff filed this lawsuit on March 6, 2017, at which point the CIA responded and assigned a tracking number. (*Id.* ¶¶ 32–35.)

Shortly after Plaintiff filed its Complaint, the President posted two tweets mentioning Flynn. On March 20, 2017, he tweeted: "FBI Director Comey refuses to deny he briefed President Obama on calls made by Michael Flynn to Russia." (Pl.'s Resp. 7(h)(1) Statement ¶ 1.)[1] And on March 31, 2017, he tweeted: "Mike Flynn should ask for immunity in that this is a witch hunt (excuse for big election loss), by media & Dems, of historic proportion!" (*Id.* ¶ 2.)[2]

On May 3, 2017, former FBI Director James Comey testified before the Senate Judiciary Committee and "acknowledged [] that some investigative actions had been conducted in relation to General Flynn." (Pl.'s Resp. 7(h)(1) Statement ¶ 6.) During Comey's testimony, Senator Whitehouse mentioned that there was a "two-day interval" between an "FBI interview of Michael Flynn . . . and [the] deputy attorney general's report to White House counsel." (ECF No. 10-5 ("First Hardy Decl.") ¶ 11 n. 1.) Senator Whitehouse then asked Comey whether he had participated in conversations about communications between Kislyak and Flynn during this

---

[1] Plaintiff's Response 7(h)(1) Statement contains two references to paragraph 1. Here, the court is referring to the paragraph 1 appearing on page 11.

[2] Plaintiff's Response 7(h)(1) Statement contains two references to paragraph 2. Here, the court is referring to the paragraph 2 appearing on page 12.

2

time period.  (*Id.*)  Comey replied, "I don't know whether two days is right.  I think it might have been a day.  I could be wrong.  It could have been two days.  And I did participate in conversations about that matter, and I think I'll stop there because I don't . . ."  (*Id.*)

> Weeks later, on May 16, 2017, the White House issued a statement that provided, in part:
>
> While the president has repeatedly expressed his view that General Flynn is a decent man who served and protected our country, the president has never asked Mr. Comey or anyone else to end any investigation, including any investigation involving General Flynn . . .  The president has the utmost respect for our law enforcement agencies, and all investigations.  This is not a truthful or accurate portrayal of the conversation between the president and Mr. Comey.

(ECF No. 14-1 ("Pl.'s Resp.") at 6 (quoting Michael S. Schmidt, *Comey Memo Says Trump Asked Him to End Flynn Investigation*, N.Y. Times, May 16, 2017, at A1).)

The next day, the CIA informed Plaintiff, in what is known as a *Glomar* response,[3] that the CIA could neither confirm nor deny the existence of records responsive to Plaintiff's FOIA request.  (ECF 10-7 ("Shiner Decl.") ¶¶ 7–8.)  The CIA asserted that the existence *vel non* of the requested records is exempt from release under FOIA exemptions (b)(1) and (b)(3).  (*Id.* ¶ 15.)

On May 19, 2017, Treasury also issued a *Glomar* response.  (ECF No. 10-6 ("Jordan Decl.") ¶ 5.)  However, it invoked FOIA exemptions 1, 3, 7(A) and 7(E).  (*Id.* ¶ 25.)

Lastly, on May 19, the FBI informed Plaintiff that it was withholding all responsive records pursuant to FOIA exemption 7(A), which permits agencies to withhold records if

---

[3] A *Glomar* response is "[a] response to a FOIA request, in which an agency states that it can 'neither confirm nor deny' the existence of responsive records, [named] after a case concerning a FOIA request for records relating to an underwater sea craft called the 'Glomar Explorer.'" *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 888 n.2 (D.C. Cir. 1995) (citing *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976)).

disclosure "could reasonably be expected to interfere with enforcement proceedings."[4]  (First

Hardy Decl. ¶¶ 10, 19 (citing 5 U.S.C. § 552(b)(7)(A)).)  After the parties had filed motions for

summary judgment, Flynn pleaded guilty to violating 18 U.S.C. § 1001.  (ECF No. 16-1

("Second Hardy Decl.") ¶ 5.)  And because some of the information relating to his case, such as

the information, plea agreement, and statement of offense, was made public, the FBI assessed

whether any modifications to its application of the 7(A) exemption were warranted, and

concluded that its assertion of the 7(A) exemption had not been undermined and that no

additional information about the investigation could be disclosed without adversely affecting the

still-pending investigation and now-pending prosecution.[5]  (*Id.* ¶¶ 5–6.)

On December 17, 2018, in connection with the Flynn criminal matter, Judge Emmet

Sullivan found that "the January 24, 2017 FD-302, which was drafted immediately after Mr.

Flynn's FBI interview, is relevant to Mr. Flynn's sentencing" and that the government's

proposed redactions to the FD-302 were appropriate.  Dec. 17, 2018 Min. Order, *United States v.

Flynn*, 17-cr-232-EGS (D.D.C.).  Judge Sullivan ordered the government to file the redacted

version of the document on the docket, and the government did so.  *Id.*; ECF No. 62.

Following this development, the FBI conducted a third review of its 7(A) withholding

and "concluded that it was no longer appropriate to withhold the released records from Plaintiff

in their entirety pursuant to FOIA Exemption (b)(7)(A)."  (ECF No. 22 ("Aug. 14, 2019 Notice

of FOIA Records Release") at 1.)  Consequently, on July 31, 2019, the FBI released two non-

---

[4] By Minute Order dated June 6, 2017, the court granted the FBI leave to focus its argument on Exemption 7(A) in its first motion for summary judgment and preserve the right to assert other exemptions in future proceedings if necessary.  ("June 6, 2017 Min. Order.")

[5] Flynn's criminal case is ongoing.  *See United States v. Flynn*, 17-cr-232 (D.D.C.).

exempt redacted records to Plaintiff.  (*Id.*)  The FBI maintains that the records are properly

redacted pursuant to FOIA exemptions (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E); and Plaintiff does

not challenge the redactions.  (*Id.* at 1–2.)  Further, after releasing the records, the FBI conducted

an additional review and determined that "no additional records are impacted by its disclosure."

(ECF No. 24 ("Sept. 20, 2019 Joint Status Report").)

## II.  LEGAL STANDARD

Summary judgment is appropriate where the record shows there is no genuine issue of

material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*,

298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact

exists, the court must view all facts in the light most favorable to the non-moving party.  *See,

e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "A fact is 'material' if a dispute

over it might affect the outcome of a suit under governing law; factual disputes that are

'irrelevant or unnecessary' do not affect the summary judgment determination."  *Holcomb v.

Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242,

248 (1986)).  "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'"  *Id.*

FOIA cases are typically and appropriately decided on motions for summary

judgment.  *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  "FOIA

provides a 'statutory right of public access to documents and records' held by federal

government agencies."  *Citizens for Responsibility & Ethics in Wash.* ("*CREW*") *v. U.S. Dep't of

Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413

(D.C. Cir. 1982)).  FOIA requires that federal agencies comply with requests and make their

records available to the public unless such "information is exempted under [one of nine] clearly

delineated statutory [exemptions]." *Id.*; *see also* 5 U.S.C. §§ 552(a)–(b).  The district court

conducts a *de novo* review of the government's decision to withhold requested documents under

any of FOIA's specific statutory exemptions.  *See id.* § 552(a)(4)(B).  The burden is on the

government agency to show that nondisclosed, requested material falls within a stated

exemption.  *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir.

1992) (citing 5 U.S.C. § 552(a)(4)(B)).

　　　In cases where the applicability of certain FOIA exemptions is at issue, agencies may rely

on supporting declarations that are reasonably detailed and non-conclusory.  The declarations

must provide enough information "to afford the FOIA requester a meaningful opportunity to

contest, and the district court an adequate foundation to review, the soundness of the

withholding."  *King v. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987).  "If an agency's

affidavit describes the justifications for withholding the information with specific detail,

demonstrates that the information withheld logically falls within the claimed exemption, and is

not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then

summary judgment is warranted on the basis of the affidavit alone."  *Am. Civil Liberties Union v.*

*U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted).  However, a motion

for summary judgment should be granted in favor of the FOIA requester where "an agency seeks

to protect material which, even on the agency's version of the facts, falls outside the proffered

exemption."  *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting

*Petroleum Info. Corp.*, 976 F.2d at 1433).

## III.  ANALYSIS

Plaintiff challenges each Defendant's response.  It maintains that the FBI, on behalf of the DOJ, should not be permitted to categorically withhold information under exemption 7(A), because it failed to "demonstrate with 'detail and specificity' that there are <u>no</u> records that cannot be released." (Pl.'s Resp. at 7–8 (emphasis in original).)  And with respect to Treasury and the CIA, Plaintiff contends that each agency improperly issued a *Glomar* response.  (*Id.* at 3–7.)

Defendants raise several bases for their withholdings in their motion for summary judgment, only some of which Plaintiff contests.  Although "a motion for summary judgment cannot be 'conceded' for want of opposition," *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016), "this does not mean . . . that the Court must assess the legal sufficiency of each and every exemption invoked by the government in a FOIA case," *Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017).  Instead,

> [w]here the FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or information, there is no case or controversy sufficient to sustain the Court's jurisdiction.

*Id.*  Therefore, the court will address only Plaintiff's arguments in response to Defendants' motion for summary judgment.

### A.    FBI's Invocation of Exemption 7(A)

Exemption 7(A) permits an agency to withhold "records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7).  "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and

strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000).  When an agency "specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998).  However, the "deferential" standard of review is not "vacuous."  *Id.* (quoting *Pratt*, 673 F.2d at 421).

To successfully invoke exemption 7(A), an agency must first make a "threshold" showing "that the records were compiled for a law enforcement purpose," *Kay v. FCC*, 976 F. Supp. 23, 37 (D.D.C. 1997), which the agency can demonstrate by pointing to a "concrete prospective law enforcement proceeding" that would be impacted by the release of responsive records, *CREW v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 229 (D.D.C. 2009) (internal quotation marks omitted).  Next, the agency must show that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated."  *CREW v. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)).  "Exemption 7(A) explicitly requires a predictive judgment of the harm that will result from the disclosure of information, permitting withholding when it 'could be reasonably expected' that the harm will result."  *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 928 (D.C. Cir. 2013) (quoting 5 U.S.C § 552(b)(7)(A)).

The FBI submitted two declarations from Thomas Hardy, the FBI Section Chief of Record/Information Dissemination.  The first declaration accompanied Defendants' motion for summary judgment and explained the FBI's withholding following Comey's testimony before

the Senate Judiciary Committee.  (First Hardy Decl. ¶ 12.)  The declaration provided a category-by-category justification for the FBI's withholdings because "identifying the precise number of particular types of records and precisely describing them would reveal non-public information about the targets and scope of the investigation, where the FBI is focusing or has focused its resources at any given period of time, and what investigative techniques and procedures are being or have been deployed."  (*Id.* ¶ 25.)  The second declaration accompanied Defendants' reply and reaffirmed the FBI's position after Flynn entered a guilty plea and documents associated with his case were publicly released.  (Second Hardy Decl. ¶¶ 5–6.)  According to the FBI, the development in the Flynn matter "did not undermine its assertion of Exemption (b)(7)(A) to protect the entirety of the investigative file," did not eliminate the risk of adversely affecting the investigation, the prosecution, and other prosecutions, and did not alter "the determination that disclosure of any records responsive to Plaintiff's FOIA request in this case would adversely affect the pending investigation and prosecution."[6]  (*Id.* ¶¶ 6–9.)

Plaintiff does not contest, nor could it reasonably, the FBI's representation that the requested documents were compiled for a law enforcement purpose, and that the enforcement proceedings are ongoing.  Instead, Plaintiff contends that because some information about the Flynn investigation has been made public, there must be records that are releasable, and therefore asks this court to order the FBI to provide a document-by-document justification for its withholdings.  (Pl.'s Resp. at 7–8.)

---

[6] The FBI released two more redacted documents after a third review.  (Aug. 14, 2019 Notice of FOIA Records Release at 1.)  Plaintiff does not challenge these redactions.  (*Id.* at 1–2.)  Further, the parties' respective positions following the release remain unchanged.  (*See* ECF No. 23 ("Sept. 6, 2019 Joint Status Report"); Sept. 20, 2019 Joint Status Report.)

It is well settled that "the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine . . . whether the specific claimed exemptions are properly applied." *Gallant v. N.L.R.B.*, 26 F.3d 168, 173 (D.C. Cir. 1994) (internal quotation marks omitted). An agency adopting the categorical approach "has a three-fold task. First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings." *Bevis v. Dep't of State*, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986).

After identifying the types of documents responsive to Plaintiff's request, the FBI created three functional categories of withheld documents: 1) investigative records or information; 2) evidentiary records or information; and 3) administrative records or information. (First Hardy Decl. ¶¶ 27, 29.) Having determined that "[e]ach responsive record in this case, and the information contained in each record, falls into one or more of these categories," (*id.* ¶ 29), the FBI concluded that providing any further detail "risks the very harms that the FBI is trying to avoid by relying on Exemption (b)(7)(A)," (*id.* ¶ 41).

The court finds that the FBI has satisfied the requirements for employing the categorical approach in lieu of the document-by-document approach Plaintiff seeks. As shown below, the first Hardy declaration "explains how the specific risks entailed in premature disclosure of one category of document might differ from risk of disclosure of the other," *CREW*, 746 F.3d at

1099, and "allows the court to trace a rational link between the nature of the document[s] and the alleged likely interference," *Bevis*, 801 F.2d at 1389.

1. Investigative Information

The investigative records or information category encompasses

> records of law enforcement methods or procedures undertaken in furtherance of its investigation, to include requests for authority to engage in various investigatory activities or employ particular methods or procedures; the results of such activities, methods, or procedures; and the collection, analysis, and dissemination of information obtained through utilization of these activities, methods, or procedures.

(First Hardy Decl. ¶ 30.)

The FBI contends that, given the nature of these investigative materials, release at this time "would disclose evidence, investigative information, law enforcement methods and procedures being utilized in this investigation, and criminal intelligence developed by the FBI and [other government agencies] that have cooperated with and provided information to the FBI, and that are still doing so, in the pending investigation." (*Id.* ¶ 31.) Such disclosure "would reveal the scope and focus of the investigations; identify and tip off individuals of interest to law enforcement; and provide suspects or targets the opportunity to destroy evidence and alter their behavior to avoid detection." (*Id.*) These concerns remain prevalent following the developments in Flynn's case. (Second Hardy Decl. ¶ 7.)

The harms identified by the FBI are specific and patently intended to be addressed by exemption 7(A). *See e.g.*, *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 386 (D.C. Cir. 2007) ("The government meets its burden by demonstrating that release of the requested information would reveal the size, scope and direction of [the] investigation and thereby allow for the destruction or alteration of relevant evidence, and the fabrication of

fraudulent alibis."); *Owens v. U.S. Dep't of Justice*, No. 04-CV-1701 (JDB), 2007 WL 778980, at *8 (D.D.C. Mar. 9, 2007) (finding that agency met its burden where it explained "that which is obvious given the nature of the information in the documents: the likelihood that disclosure would reveal sensitive strategic information, endanger sources, alert potential suspects, lead to the destruction of evidence, and increase the risk that agents in the field will be detected").

 2. Evidentiary Records

 The evidentiary records or information category encompasses "copies or records or evidence, analyses of evidence, and derivative communications discussing or incorporating evidence."  (First Hardy Decl. ¶ 33.)

 In addition to expressing some of the same concerns associated with the investigative category (*see id.* ¶ 36), the FBI represents that disclosure of evidentiary information at this time would undermine current and future investigations and prosecutions "by prematurely revealing: the scope and focus of the investigation; who the FBI is investigating, why, and for what specific activities; the identities of witnesses and cooperators; and the participation and cooperation of [other governmental agencies] and others in the investigation" (*id.* ¶ 34).  This information, if disclosed, would "arm subjects, persons of interest, and others intent on obstructing the investigation with the information necessary to take defense actions to conceal their activities; elude detection and surveillance; suppress, destroy, or fabricate evidence; and/or interfere or attempt to interfere with or intimidate witnesses, sources, and cooperators."  (*Id.*)  And even after Flynn's plea, "the concern about fabrication or adulteration of evidence remains, notwithstanding the high-level recitation of facts in the Statement of the Offense, as that statement does not recite

all facts known about charged offense, reveal the particular evidence gathered or relied upon, or identify the sources of that evidence."  (Second Hardy Decl. ¶ 7.)

Here again, the FBI has identified specific ways in which disclosure of the responsive material within this category will interfere with its ongoing investigation.  *See e.g.*, *Manning v. U.S. Dep't of Justice*, 234 F. Supp. 3d 26, 36 (D.D.C. 2017) (finding sufficient agency showing when declaration stated "that revealing confidential source statements could subject to retaliation or intimidation those individuals who are cooperating with law enforcement, which, in turn, could have a 'chilling effect on the FBI's investigative efforts here and [on] any resulting prosecutions'"); *Lieff, Cabraser, Heimann & Bernstein, LLP v. U.S. Dep't of Justice*, 697 F. Supp. 2d 79, 84–85 (D.D.C. 2010) (finding sufficient agency showing when declaration stated, in part, that "members of the cartel could use this information to, among other things, discern the scope and direction of the Division's investigation, determine what evidence cartel participants could destroy to interfere with the investigation, and harass or intimidate potential witnesses").

3. Administrative Records

The administrative records or information category encompasses "administrative information contained in other records, such as case captions, serial numbers, identities of FBI field offices, dates of investigations, and administrative instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines."  (First Hardy Decl. ¶ 37.)

The FBI argues that disclosing administrative instructions and information about investigative activities could reveal "law enforcement techniques and procedures being utilized or contemplated . . . ; the cooperation of [other governmental agencies] in the investigations; the

identities of sources, witnesses, targets . . . ; any potential or perceived challenges in the investigation; and requests for specific investigative inquires," (*id.* ¶ 38), which could "provide a road map of the FBI's investigation—what has already occurred and what is being planned" (*id.* ¶ 39). This road map would expose actual and anticipated witnesses and sources. (*Id.*) With respect to other administrative materials "such as storage envelopes, transmittal forms, and standardized forms, . . . . the manner in which they have been used and organized in the files in and of itself reveals information of investigative value." (*Id.* ¶ 40.) Further, "the mere fact that an FBI Special Agent used an envelope for the storage of records he/she has obtained from a source is revealing on its own . . . . and would provide information useful in identifying witnesses and ascertaining investigative strategies and items of evidence." (*Id.*)

Having reviewed the declaration's representations regarding this category, the court agrees that administrative information can be, and in this case is, protected by exemption 7(A). *See e.g.*, *Cucci v. Drug Enf't Admin.*, 871 F. Supp. 508, 511–12 (D.D.C. 1994) (finding "administrative materials category includ[ing] administrative instructions, routine reporting communications and inter-agency correspondence" was protected by exemption 7(A)); *Manning*, 234 F. Supp. 3d at 36–37 (finding "administrative materials" category, which contained "three subcategories: (1) reporting communications; (2) miscellaneous administrative documents; and (3) administrative instructions" was protected by exemption 7(A)).

*     *     *

The FBI's decision to categorically withhold the documents is appropriate. *See CREW*, 746 F.3d at 1098 ("Categorical withholding is often appropriate under Exemption 7(A)."). Awarding the appropriate level of deference to the FBI, the court accepts its representation that

providing document-by-document justification would reveal sensitive and closely-held information to not only the requestors and the general public, but also to present and future targets, witnesses, and subjects of the investigation.  *See id.* (noting "we give deference to an agency's predictive judgment of the harm that will result from disclosure of information" where the agency demonstrates how disclosure will cause harm).  Equipped with information regarding the targets, scope, focus, and investigative techniques, certain individuals would be able to readily interfere with the FBI's investigation and prosecution.

    None of the FBI's legitimate harms are undercut by Plaintiff's conclusory assertion that "extensive information already is in the public domain about the FBI investigation of Flynn" and therefore "it is difficult to imagine that there are not at least some records that are releasable." (Pl.'s Resp. at 7–8.)  Plaintiff has failed to identify the "extensive information" that has been released in the public domain and which undermines the FBI's invocation of exemption 7(A).  Moreover, following the release of documents associated with Flynn's guilty plea, the FBI re-evaluated its withholding and provided a supplemental declaration setting forth, with sufficient detail, why the requested documents remained covered by FOIA exemption 7(A).  After the release of additional documents in connection with Flynn's sentencing, the FBI determined that only two documents were no longer protected by FOIA exemption 7(A).  The court credits these representations.

Therefore, because the category-by-category approach is appropriate, and the FBI demonstrated how the release of each functional category would interfere with enforcement proceedings, the court grants summary judgment to the FBI on this issue.[7]

### B.      Treasury and CIA's *Glomar* Responses

An agency's *Glomar* response is proper if either confirming or denying the existence of responsive records "would itself 'cause harm cognizable under a[] FOIA exception.'"  *Am. Civil Liberties Union v. CIA*, 710 F.3d 422, 426–27 (D.C. Cir. 2013) (quoting *Roth v. U.S. Dep't of Justice,* 642 F.3d 1161, 1178 (D.C. Cir. 2011)).  A plaintiff may overcome an otherwise valid *Glomar* response, however, if it demonstrates that the requested records have been officially acknowledged in the public domain.  *See id.* at 426–27.

An official acknowledgment inquiry in the *Glomar* context is not the same as when an agency *does* acknowledge the existence of a record and invokes a FOIA exemption.  In that situation, the information requested must: (1) "be as specific as the information previously released," (2) "match the information previously disclosed," and (3) "already have been made public through an official and documented disclosure."  *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)).  Conversely, under *Glomar* and its progeny, when the official acknowledgment demonstrates the existence of the records the requester seeks, "the prior disclosure necessarily matches both the information at issue—the existence of records—and the specific request for that information."  *Wolf*, 473 F.3d at 379.  Accordingly, the court must analyze only whether the prior disclosure acknowledges the

---

[7] The court has reviewed *in camera* unredacted copies of the Government's motion for summary judgment and accompanying papers and finds that the redacted material further supports the court's finding that the FBI properly invoked FOIA exemption 7(A).

existence of the records sought; the disclosure of the content of the records is not relevant to the court's inquiry. *See Marino v. Drug Enf't Admin.*, 685 F.3d 1076, 1081 (D.C. Cir. 2012) ("[T]he public domain exception is triggered when 'the prior disclosure establishes the *existence* (or not) of records responsive to the FOIA request,' regardless whether the contents of the records have been disclosed.") (quoting *Wolf*, 473 F.3d at 379) (emphasis in original).

Here, the sole issue before the court is whether there has been an official acknowledgment of the CIA or Treasury's involvement in the Flynn investigation.[8]

Plaintiff proffers three public remarks—two Presidential tweets and one White House statement—as evidence of an official acknowledgement of a CIA and Treasury investigation.[9] (Pl.'s Resp. at 4–6.)  Because there are public statements connecting the FBI to the Flynn investigation, Plaintiff maintains that it "defies credulity for the agencies to contend that they might not have files relating to the Flynn investigation.  Both agencies have an interest in Russia,

---

[8] Treasury has invoked its authority to issue a *Glomar* response under FOIA exemptions 1, 3, 7(A), and 7(E), and the CIA has invoked its authority to issue a *Glomar* response under FOIA exemptions 1 and 3.  (Pl.'s Resp. 7(h)(1) Statement ¶¶ 26, 28–31, 38, 40.)  While Plaintiff appears to dispute the agencies' conclusion regarding the invoked exemptions in its Response 7(h)(1) Statement, Plaintiff did not challenge them in briefing.  Therefore, the court addresses only Plaintiff's official acknowledgement argument.  *See Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011) (analyzing only whether an official acknowledgment occurred because plaintiff did not challenge the agency's reliance on exemptions); *James Madison Project v. Dep't of Justice*, 302 F. Supp. 3d 12, 20 (D.D.C.), reconsideration denied in part, 320 F. Supp. 3d 143 (D.D.C. 2018), and appeal dismissed *sub nom. James Madison Project v. U.S. Dep't of Justice*, No. 18-5014, 2019 WL 2563396 (D.C. Cir. May 16, 2019) (finding that when an agency's reliance on an exemption for a *Glomar* response is uncontested, "the court need not inquire whether Defendants have shown that the fact of the existence or nonexistence of agency records falls within a FOIA exemption").

[9] Although Plaintiff references Comey's testimony, it does not include the testimony as an example of official acknowledgement of a CIA or Treasury investigation.  (Pl.'s Resp. at 4–6.)

sanctions imposed on Russia, and whatever Flynn's activities might have been.  It simply would be malfeasance if either agency did not have such files."  (ECF No. 19 ("Pl.'s Reply") at 1.)

The court finds that each public remark fails to meet the "official acknowledgement" standard for the same reason:  while the remarks may serve as acknowledgement of an *FBI* investigation, they do not lead to the same inference regarding an investigation conducted by the *CIA* or *Treasury*.

    1.  <u>President Trump's Tweet #1</u>[10]

On March 20, 2017, the President tweeted: "FBI Director Comey refuses to deny he briefed President Obama on calls made by Michael Flynn to Russia."  (Pl.'s Resp. 7(h)(1) Statement ¶ 1.)[11]  According to Plaintiff, "this statement implicitly confirms that the FBI was looking into the issue of communications between Flynn and the Russian ambassador."  (Pl.'s Resp. at 5.)

While it very well may be the case that the President's tweet implicitly confirms that the FBI was looking into Flynn-Kislyak communications, the tweet in no way implicates the CIA or the Treasury; it specifically refers to the director of the FBI and does not mention any other agency or sanctions imposed on Russia.  Therefore, it cannot constitute an official acknowledgement of a CIA or Treasury investigation.

---

[10] In accord with other courts in this district, this court will assess each tweet as if it constitutes an official statement, because Defendants have not argued to the contrary.  *See, e.g.*, *James Madison Project*, 302 F. Supp. 3d at 24 (assessing President Trump's tweets as official statements where defendants treated the tweets as official statements); *Leopold v. CIA*, 380 F. Supp. 3d 14, 22, n.2 (D.D.C. Mar. 29, 2019) (assessing President Trump's tweet as an official statement where defendants "assume[ed] arguendo" that it was).

[11] Plaintiff's Response 7(h)(1) Statement contains two references to paragraph 1.  The court refers to the paragraph 1 appearing on page 11.

2.  <u>President Trump's Tweet # 2</u>

On March 31, 2017, the President tweeted: "Mike Flynn should ask for immunity in that this is a witch hunt (excuse for big elections loss), by media & Dems, of historic proportion!" (Pl.'s Resp. 7(h)(1) Statement ¶ 2.)[12]  According to Plaintiff, "[t]he only reasonable inference to be drawn from this statement is that there is an investigation (*i.e.*, 'witch hunt') which might lead to a prosecution from which Flynn should seek immunity."  (Pl.'s Resp. at 5.)

While it may be reasonable to infer, due to use of the terms "immunity" and "witch hunt," that the President is referring to Flynn's prosecution, this tweet does not directly implicate any specific government agency, and therefore does not constitute an official acknowledgment of a CIA or Treasury investigation.

3.  <u>White House Statement</u>

Lastly, Plaintiff points to a White House statement, which provided, in part:

> While the president has repeatedly expressed his view that General Flynn is a decent man who served and protected our country, the president has never asked Mr. Comey or anyone else to end any investigation, including any investigation involving General Flynn. . . . The president has the utmost respect for our law enforcement agencies, and all investigations.  This is not a truthful or accurate portrayal of the conversation between the president and Mr. Comey.

(Pl.'s Resp. at 6 (quoting Michael S. Schmidt, *Comey Memo Says Trump Asked Him to End Flynn Investigation*, N.Y. Times, May 17, 2017, at A1).)  Plaintiff claims that this statement shows that it is "common knowledge" that Flynn is the subject of an investigation and that the investigation is "ongoing."  (Pl.'s Resp. at 5–6.)

---

[12] Plaintiff's Response 7(h)(1) Statement contains two references to paragraph 2.  The court refers to the paragraph 2 appearing on page 12.

Plaintiff is correct that this statement references an ongoing FBI investigation into Flynn. However, it does not suggest that the CIA or Treasury are involved in the investigation. Therefore, this statement does not constitute an official acknowledgement of a CIA or Treasury investigation into Flynn.

*     *     *

For an official acknowledgement to defeat a *Glomar* response, the statement "must 'leave no doubt' that the agency possesses the requested records." *James Madison Project v. Dep't of Justice*, 302 F. Supp. 3d 12, 20, 29–30 (D.D.C.), reconsideration denied in part, 320 F. Supp. 3d 143 (D.D.C. 2018), and appeal dismissed *sub nom. James Madison Project v. U.S. Dep't of Justice*, No. 18-5014, 2019 WL 2563396 (D.C. Cir. May 16, 2019) (quoting *Am. Civil Liberties Union*, 710 F.3d at 429).   In this case, there is doubt as to whether the CIA or Treasury have an intelligence interest in Flynn.  Plaintiff provides no information suggesting that CIA or Treasury are conducting an investigation; rather it simply asserts that because the FBI is investigating Flynn, "[i]t would simply be malfeasance if either agency did not have such files."  (Pl.'s Reply at 1.)  This assertion does not overcome the fact that no official acknowledgement matches the records Plaintiff seeks, and there is no evidence that the information is in the public domain. *James Madison Project*, 302 F. Supp. 3d at 29–30 ("[T]he official acknowledgement standard is not a[] 'surely the agency must have it' standard.  The official statements themselves must 'leave no doubt' that the agency possesses the requested records.").

Consequently, the court grants summary judgment on this issue, finding that no official acknowledgment exists regarding a CIA or Treasury investigation into Flynn that would override either *Glomar* response.

20

**IV.  CONCLUSION**

Defendants' motion for summary judgment is granted, Plaintiff's cross-motion for summary judgment is denied, and the court requests that the Clerk of Court close this case. A corresponding order shall issue separately.

Date:  September 29, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge